USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: 
DATE FILED: 9/11/2026

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

M. BOOTH & ASSOCIATES, LLC,

Plaintiff,

-v-

JONATAN SOCORRO-PROSPERO,

Defendant.

**MEMORANDUM AND ORDER**

24-CV-6769 (VSB) (HJR)

**HENRY J. RICARDO, United States Magistrate Judge.**

Before the Court are two motions for sanctions filed by Plaintiff M. Booth & Associates, LLC ("Plaintiff" or "M. Booth") against Defendant Jonatan Socorro-Prospero ("Defendant" or "Socorro-Prospero"). The first motion, ECF No. 99 (the "First Motion"), requests monetary sanctions, while the second motion, ECF No. 115 (the "Second Motion," collectively, the "Motions"), requests judgment in its favor as to Counts II and V or, in the alternative, an adverse inference. For the reasons set forth below, the First Motion is **GRANTED IN PART and DENIED IN PART** without prejudice to renewal. The Second Motion is **DENIED** without prejudice to renewal.

## I. BACKGROUND

### A. Factual and Procedural Background

M. Booth brought this action against its former employee, Socorro-Prospero, alleging that he improperly published works belonging to M. Booth or its clients on his personal business website. Complaint, ECF No. 1 ("Complaint" or "Compl.") ¶¶

2–3. M. Booth claims Socorro-Prospero misappropriated these works after the conclusion of his employment either by refusing to return them or through unauthorized access to M. Booth's Google Drive. *Id.* ¶¶ 19–25. Defendant initially appeared *pro se*, but retained counsel in April 2025. ECF No. 34.

Discovery began in January 2025 and was scheduled to be completed by June 9, 2025. *See* Case Management Plan, ECF No. 25 ("CMP"); Plaintiff's Memorandum of Law, ECF No. 101 ("1st Mem.") at 5.[1] Plaintiff served its first set of interrogatories and production requests on February 7, 2025. 1st Mem. at 8 (citing First Declaration of Timothy A. Gumaer ("Gumaer Decl.") Ex. A, ECF No. 100-1; Gumaer Decl. Ex. B, ECF No. 100-2). Defendant served unverified interrogatory responses on February 10, 2025. *Id.* (citing Gumaer Decl. Ex. C, ECF No. 100-3). After Defendant failed to provide verified interrogatory responses or to respond to Plaintiff's document requests, the Court held its first discovery conference on April 29, 2025. *Id.* at 8–9. At that conference, the Court ordered Defendant to respond to Plaintiff's discovery requests. *Id.* at 9–10; ECF No. 37.

The Court held a second discovery conference on July 18, 2025, ordering Defendant to serve supplemental responses to Interrogatory Nos. 2, 3, and 6 by July 25, 2025. 1st Mem. at 12; ECF No. 51. Defendant's supplemental responses were essentially identical to those previously served. 1st Mem. at 13 (citing Gumaer Decl. Ex. P, ECF No. 100-16).

[1] Pages cited in court filings refer to the ECF-generated pagination.

Plaintiff requested another conference on August 4, 2025. *Id.*; ECF No. 56. At the third discovery conference, held on August 22, 2025, the Court again ordered Defendant to serve supplemental answers to Interrogatory Nos. 2 and 3 by August 27, 2025 and explicitly warned Defendant of possible sanctions if he failed to comply. 1st Mem. at 14; ECF No. 62. The Court also ordered the parties to meet and confer regarding forensic inspection of Defendant's personal electronic devices. 1st Mem. at 14; ECF No. 62.

On August 27, 2025, defense counsel announced that Socorro-Prospero would be leaving the United States on September 16, 2025, with no set return date. 1st Mem. at 14 (citing Gumaer Decl. Ex. R, ECF No. 100-18). Plaintiff filed a letter on September 9, 2025 asking the Court to address Defendant's imminent departure and the imaging of his devices. *Id.* at 15 (citing ECF No. 63). On September 15, 2025, the Court held a fourth discovery conference and ordered Defendant to have his electronic devices imaged and to leave his devices (except his iPhone) with counsel before leaving the country. *Id.* at 16; ECF No. 70.

On September 22, 2025, Plaintiff learned that Socorro-Prospero had taken his laptop abroad on September 16, 2025. *Id.* (citing ECF No. 73). Defendant also failed to leave his 160GB Camera Memory Card ("Memory Card"), Wacom Tablet ("Tablet"), and Sandisk External Hard Drive ("Hard Drive") with defense counsel, explaining that they "may or may not have been left with a family member." *Id.* (citing ECF No. 73). Defendant claimed that he took his laptop out of the country because he had "learned the morning of his flight that he had secured work as a

contractor on a job he had bid for" which required him to have his laptop. *Id.* at 16–17 (quoting ECF No. 78).

On October 2, 2025, the Court held a fifth discovery conference and found that Defendant had violated the Court's September 15 order by taking his laptop abroad. *Id.* at 17 (citing ECF No. 80). During this conference, defense counsel represented that Socorro-Prospero's Memory Card, Tablet, and Hard Drive were in storage, not with a family member. *Id.* In October 2025, defense counsel advised Plaintiff that Socorro-Prospero had been mistaken and that the Memory Card, Tablet, and Hard Drive had been misplaced. *Id.* at 18–19 (citing Gumaer Decl. Ex. AA, ECF No. 100-27; ECF No. 83). From October through December 2025, Defendant traveled throughout Asia, including India, Thailand, Vietnam, Japan, and Korea. *Id.* at 6, 19–25. During his travels, Defendant failed to have his electronic devices imaged, despite Plaintiff's efforts to coordinate imaging. *Id.*

On November 25, 2025, the Court held a sixth discovery conference. *Id.* at 21 (citing ECF No. 93). At that time, the Court ordered Defendant to describe how any devices were misplaced or lost, to produce documents related to an alleged temporary loss of his laptop, to produce documents relating to the new "gig" that allegedly induced Defendant to take his laptop abroad, and to have his iPhone and laptop imaged while he was in Japan. *Id.* at 21–22 (citing ECF No. 93). Defendant failed to provide this information by the Court's deadline. *Id.* at 23–24.

From December 2025 to March 2026, Defendant continued to fail to image his iPhone and laptop. *Id.* at 24–25; Plaintiff's Second Reply Memorandum of Law,

ECF No. 122 ("2nd Reply") at 6–7. Finally, these two devices were imaged on March 3, 2026. 2nd Reply at 6. Plaintiff alleges that this imaging "revealed the deletion of data which is not recoverable." *Id.* (citing Declaration of Michael Kunkel, ECF No. 123-1 ¶10). As of July 7, 2026, the parties represented that they had completed almost all fact discovery. ECF No. 137 at 1. Expert discovery remains outstanding.

### B. The Present Motions

On November 25, 2025, the Court granted Plaintiff leave to move for monetary sanctions. ECF No. 93. On January 1, 2026, Plaintiff filed its first motion for sanctions seeking attorneys' fees and costs associated with Defendant's failure to comply with discovery obligations. ECF No. 99. Defendant filed his opposition to the First Motion on January 23, 2026. ECF No. 112 (the "1st Opp"). Plaintiff filed its reply on February 6, 2026. ECF No. 114 (the "1st Reply"). On January 13, 2026, the Court granted Plaintiff leave to file a second sanctions motion. ECF No. 107. On February 16, 2026, Plaintiff filed a second motion for sanctions seeking judgment in its favor as to certain claims or, in the alternative, an adverse inference, ECF No. 115, along with a supporting memorandum of law, ECF No. 117 (the "2nd Mem."). Defendant filed his opposition to the Second Motion on March 2, 2026. ECF No. 120 (the "2nd Opp."). Plaintiff filed its reply brief on March 16, 2026. ECF No. 122.

## II. LEGAL STANDARDS

### A. Rule 37

When a party "fails to obey an order to provide or permit discovery," Rule 37 permits "the court where the action is pending [to] issue further just orders." Fed. R. Civ. P. 37(b)(2)(A). Under Rule 37, two standards limit a court's discretion in awarding sanctions. *Ins. Corp. of Ir. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 707 (1982). First, any sanction awarded must be "just[.]" *Id.* Second, the sanctions "must be specifically related to the particular 'claim' which was at issue in the order to provide discovery." *Id.*

Courts in this District are guided by four factors when exercising discretion to impose Rule 37 sanctions: "(1) the willfulness of the non-compliant party or the reason for noncompliance; (2) the efficacy of lesser sanctions; (3) the duration of the period of noncompliance; and (4) whether the non-compliant party had been warned of the consequences of . . . noncompliance." *World Wide Polymers, Inc. v. Shinkong Synthetic Fibers Corp.*, 694 F.3d 155, 159 (2d Cir. 2012) (alteration in original) (citing *Agiwal v. Mid Island Mortg. Corp.*, 555 F.3d 298, 302 (2d Cir. 2009)). "[T]hese factors are not exclusive and they need not each be resolved against the party challenging the . . . sanctions" for the court to impose sanctions. *Id.* (internal quotation marks omitted) (quoting *S. New England Tel. Co. v. Global NAPs Inc.,* 624 F.3d 123, 144 (2d Cir. 2010)).

Rule 37 provides that the court can order the "disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's

fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(b)(2)(C). An order "to reimburse the opposing party for expenses caused by the failure to cooperate is the mildest Rule 37 sanction available to a court faced with a party's failure to comply with a discovery order." *State v. U.S. Dep't of Com.*, 461 F. Supp. 3d 80, 92 (S.D.N.Y. 2020) (internal quotation marks and citation omitted).

### 1. Rule 37(e)

Rule 37(e) governs sanctions for failure to preserve electronically stored information ("ESI"). Rule 37(e) provides that, if ESI is lost and cannot be restored, a court may: (1) "upon finding prejudice to a party related to the loss . . . order measures no greater than necessary to cure the prejudice" or

> (2) upon finding that the party acted with the intent to deprive another party of the information's use in the litigation may: (A) presume that the lost information was unfavorable to the party; (B) instruct the jury that it may or must presume the information was unfavorable to the party; or (C) dismiss the action or enter a default judgment.

Thus, the Rule 37(e) analysis involves a three-part inquiry:

> *First*, the court must decide if the rule applies at all—that is, if a party failed to take reasonable steps to preserve [ESI] . . . *Second*, the court must determine whether there has been prejudice to another party . . . in which case the [c]ourt may order measures no greater than necessary to cure the prejudice. *Third*, the court must consider—regardless of prejudice to any other party—whether the destroying party acted with the intent to deprive another party of the information's use in the litigation, in which event a court may consider whether to impose the most severe sanctions of dismissal or an adverse-inference instruction.

*Oakley v. MSG Networks, Inc.*, 792 F. Supp. 3d 377, 383 (S.D.N.Y. 2025) (internal quotation marks and citations omitted) (alterations in original).

### 2. Adverse Inferences and Default Judgments

Rule 37 also authorizes a court to enter orders, *inter alia*, "directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims;" "prohibiting the disobedient party from supporting or opposing designated claims or defenses;" "striking pleadings in whole or in part;" or "dismissing the action or proceeding in whole or in part[.]" Fed. R. Civ. P. 37(b)(2)(A)(i). While the court may consider whether "lesser sanctions would be ineffective to achieve compliance," the court is "not required to exhaust possible lesser sanctions before imposing dismissal or default[.]" *S. New England Tel. Co.*, 624 F.3d at 148.

Sanctions involving an adverse inference instruction are "usually . . . employed in cases involving spoliation of evidence," but may be granted "for the non-production of evidence." *Icon Int'l, Inc. v. Elevation Health LLC*, 347 F.R.D. 274, 295 (S.D.N.Y. 2024) (internal quotation marks omitted) (quoting *Hawley v. Mphasis Corp.*, 302 F.R.D. 37, 54 (S.D.N.Y. 2014)). A court may grant an adverse inference upon finding:

> (1) that the party having control over the evidence had an obligation to timely produce it; (2) that the party that failed to timely produce the evidence had a culpable state of mind; and (3) that the missing evidence is relevant to the . . . claim or defense [of the other party] such that a reasonable trier of fact could find that it would support that claim or defense.

*Id.* (alterations in original) (quoting *Savor Health, LLC v. Day*, 2022 WL 1912881, at *4 (S.D.N.Y. May 17, 2022), *adopted by* 2022 WL 2315059 (S.D.N.Y. June 28, 2022)). Courts are generally "reluctant to impose adverse inferences as a sanction

where the evidence is ultimately produced." *Id.* at 295–96 (S.D.N.Y. 2024) (citing *Savor Health*, 2022 WL 1912881, at *7).

Default judgment sanctions under Rule 37 "are severe sanctions" that are "appropriate in extreme situations" such "as when a court finds willfulness, bad faith, or any fault on the part of the noncompliant party." *Guggenheim Cap., LLC v. Birnbaum*, 722 F.3d 444, 450–51 (2d Cir. 2013) (internal quotation marks omitted) (quoting *Bobal v. Rensselaer Polytechnic Inst.*, 916 F.2d 759, 764 (2d Cir. 1990)).

### B. 28 U.S.C. § 1927 and the Court's Inherent Authority

A federal court may also impose sanctions under 28 U.S.C. § 1927 or its inherent authority. *See* 28 U.S.C. § 1927; *Zama Capital Advisors LP v. Universal Entertainment Corp.*, No. 24-CV-1577, 2025 WL 3525044, at *4 (S.D.N.Y. Dec. 9, 2025). To impose sanctions under either authority, the court must find the party acted in bad faith through "clear evidence that (1) the offending party's claims were entirely meritless and (2) the party acted for improper purposes." *Fashion Exch. LLC v. Hybrid Promotions, LLC*, 333 F.R.D. 302, 308 (S.D.N.Y. 2019) (quoting *Revson v. Cinque & Cinque, P.C.*, 221 F.3d 71, 79 (2d Cir. 2000)). "Such bad faith can be found where the 'actions are *so completely without merit* as to require the conclusion that they must have been undertaken for some improper purpose.'" *Id.* (emphasis in original) (quoting *Revson*, 221 F.3d at 79).

## III. DISCUSSION

M. Booth seeks sanctions for Socorro-Prospero's failure to satisfy his discovery obligations, including his: (1) failure to timely and adequately respond to

M. Booths' interrogatories and document requests; (2) failure to comply with the Court's orders regarding forensic imaging of his devices; and (3) alleged spoliation of ESI evidence on his personal electronic devices. 1st Mem. at 26, 31; 2nd Mem. at 29. As described below, monetary sanctions are warranted. However, an adverse inference or a default judgment for certain of Plaintiff's claims is not appropriate at this time.

**A. Monetary Sanctions Are Warranted**

M. Booth asserts that Socorro-Prospero and his counsel have engaged in a "pattern of refusal to comply with their discovery obligations and violations of this Court's orders." 1st Mem. at 26. In response, Socorro-Prospero contends that M. Booth mischaracterizes the "extensive written record reflecting diligence and cooperation." 1st Opp. at 12. Plaintiff has the better of this argument. While monetary sanctions against Socorro-Prospero are warranted, sanctions will not be imposed on defense counsel.

First, the undersigned declines to impose sanctions based on 28 U.S.C. § 1927. Section 1927 authorizes the Court to require "[a]ny attorney or other person admitted to conduct cases in any court . . . who so multiplies the proceedings in any case unreasonably and vexatiously . . . to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." To impose sanctions based on Section 1927, "a court must find clear evidence that (1) the offending party's claims were entirely without color, and (2) the claims were brought in bad faith—that is, 'motivated by improper purposes such as harassment

or delay.'" *Kim v. Kimm*, 884 F.3d 98, 106 (2d Cir. 2018) (quoting *Eisemann v. Greene*, 204 F.3d 393, 396 (2d Cir. 2000)).

In the First Motion, Plaintiff invokes Section 1927, but does not explain why defense counsel deserves to be sanctioned under this provision. *See* 1st Mem. at 5, 25, 33. Plaintiff's First Reply explains that Section 1927 sanctions are warranted because: (1) Defendant failed to disclose in interrogatory responses that he possessed a personal laptop, which defense counsel would have known because Socorro-Prospero used the laptop at a deposition in another action where he was represented by the same attorney; and (2) Defendant engaged in piecemeal production of documents. 1st Reply at 8–9, 11. These arguments fail to demonstrate that counsel's conduct satisfies the bad faith requirement of Section 1927. Therefore, defense counsel will not be held personally liable for monetary sanctions imposed by this Court.[2]

However, pursuant to Rule 37, monetary sanctions are warranted against Socorro-Prospero. The Court is guided by the following factors when imposing Rule 37 sanctions: "(1) the willfulness of the non-compliant party or the reason for noncompliance; (2) the efficacy of lesser sanctions; (3) the duration of the period of noncompliance; and (4) whether the non-compliant party had been warned of the

[2] Similarly, although Rule 37 permits monetary sanctions to be imposed on an attorney, they are not warranted here. It is apparent from the undersigned's multiple discovery conferences in this case that the primary culprit is Socorro-Prospero, not his counsel.

consequences of . . . noncompliance." *World Wide Polymers*, 694 F.3d at 159 (alteration in original) (citing *Agiwal*, 555 F.3d at 302).

Plaintiff seeks monetary sanctions in the form of attorneys' fees and costs dating back to February 2025. 1st Mem. at 5. At that point, Defendant had served unverified interrogatory responses while he was proceeding *pro se*, but had not been warned that his behavior could warrant sanctions. 1st Mem. at 8–9. Plaintiff's request for sanctions dating back that far is excessive. While Defendant fell short of meeting his discovery obligations throughout the summer of 2025,[3] there were not clear indications of willfulness at that time and Defendant was not clearly warned of the consequences of non-compliance until the August 22, 2025 order. ECF No. 62; *see also* ECF No. 66 at 5:17–20 ("I am expressly warning the defendant that if he fails to comply with this order by Wednesday, I will consider the imposition of sanctions."). The appropriate starting point for sanctions is when Defendant violated a Court order after August 22, 2025. This most clearly occurred on September 22, 2025, when Plaintiff learned that Socorro-Prospero had left the country with his laptop, despite the Court's order that Defendant's electronic devices, excluding his iPhone, "will be given to Defendant's counsel for imaging

[3] For example, after the Court ordered Socorro-Prospero to serve supplemental responses to Interrogatory Nos. 2, 3, and 6, *see* ECF No. 51, he provided responses that were substantively identical to those that had been found deficient. *Compare* Gumaer Decl. Ex. I, ECF No. 100-9 at 3–4 (Defendant's 2nd Response to Interrogatories), *with* Gumaer Decl. Ex. P, ECF No. 100-16 at 4–5 (Defendant's 3rd Response to Interrogatories). Additionally, Defendant failed to disclose that he used a personal laptop for work-related purposes. After M. Booth pointed out that Socorro-Prospero had used his personal laptop in a different case, Defendant filed a letter explaining, "on further reflection Defendant forthrightly acknowledges that after his employment with MBooth [sic] ended, he used a device for work-related purposes." 1st Mem. at 13–14; ECF No. 59.

prior to Defendant's departure from the country." ECF No. 70 at 1–2; *see also* ECF No. 76 at 14:15–22 ("[I]f Defendant leaves this country, and particularly with, at minimum, one of these electronic devices . . . then by virtue of him simply being outside the country, he risks himself to spoliation of evidence, whether that be with fault or not. . . . And if that happens, he'll be sanctioned.").

Defendant's choice to leave the country with his laptop was willful and in violation of a Court order, despite prior warning that he could be sanctioned for such conduct. While Defendant attempts to avoid this conclusion by explaining that a new "gig" "required [him] to travel with" his laptop, his asserted justification for violating a Court order does not show that his decision to do so was involuntary. 2nd Opp. at 22–23. Defendant's argument that "Plaintiff brought this action for improper and nefarious purposes . . . . to gain leverage in response to Defendant's pending federal litigation before another Judge in this District and adverse rulings therein," is similarly unavailing. 1st Opp. at 35. Plaintiff's motivation for bringing this action has no bearing on Defendant's choice to disobey a Court order and failure to comply with it for many months thereafter. In any event, that other case has since been decided in M. Booth's favor, although that decision has been appealed to the Second Circuit. *See Jonatan Socorro-Prospero v. M. Booth and Associates, et al.*, 23-CV-11319 (S.D.N.Y. 2023), Dkt. Nos. 70, 86, 87.

Defendant's attempt to blame Plaintiff for his own lack of compliance is unpersuasive. Even assuming that "Plaintiff's late disclosure of scope and unilateral vendor demands" contributed to the delay in completing the imaging,

that does not change the fact that Defendant defied a Court order, forcing Plaintiff to make proposals for imaging internationally. 1st Opp. at 24. There would have been no need to address imaging devices abroad at all if Defendant had complied in the first place. Therefore, Plaintiff is entitled to reasonable attorneys' fees and costs beginning on September 22, 2025 through its briefing of the First Motion. Specifically, Plaintiff is entitled to its reasonable attorneys' fees and costs associated with attempting to arrange for the imaging of Defendant's electronic devices, as well as for drafting submissions to the Court pertaining to the imaging, and conferring with opposing counsel regarding imaging Defendant's devices.

Plaintiff describes additional discovery misconduct that occurred after September 22, 2025 beyond Defendant failing to image his devices. Each of Defendant's actions that violated the Court's prior orders warrants sanctions. These include:

1. Defendant's failure to produce communications with his clients in violation of the Court's September 15, 2025 order, ECF No. 70 (instructing that "Defendant shall produce by October 6, 2025 documents . . . regarding: (1) formation of client relationships and (2) references to Defendant's personal business website and/or videos and pictures published on same."). 1st Mem. at 18; and

2. Defendant's violation of the Court's November 25, 2025 order, ECF No. 93, by failing to provide supplemental responses to Plaintiff's Interrogatory No. 3 and produce certain additional documents. 1st Mem. at 24–25.

Plaintiff also complains about Defendant's failure to provide all of his relevant email addresses in response to its Interrogatory No. 7. 1st Mem. at 20. While Defendant's inconsistent responses are troubling, it appears that the Court only required production of this information in its November 25, 2025 order, ECF

No. 93, at which time Defendant provided a full response. *See* ECF No. 93 at 2 (directing Defendant to "[p]roduce documents described in items 4–9 on page 2 of ECF No. 52").[4] Under the circumstances, sanctions are not warranted for time spent pertaining to Interrogatory No. 7. *See also* ECF No. 70 (September 15, 2025 order directing that the parties "confer further regarding production" of outstanding information, including a supplemental response to Plaintiff's Interrogatory No. 7, but not ordering production of this information.).

Moreover, Plaintiff's request that it be permitted to seek additional attorneys' fees and costs incurred from January 2026 is granted to the extent that those fees and costs relate to time spent litigating the sanctionable conduct identified above.

### 1. Although Monetary Sanctions are Warranted, the Court Cannot Award Reasonable Attorneys' Fees Based on the Present Record

To determine a presumptively reasonable fee, courts look to "the lodestar—the product of a reasonable hourly rate and the reasonable number of hours required by the case." *Millea v. Metro-N. R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011) (quoting *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany*, 522 F.3d 182, 183 (2d Cir. 2008)).

> To assess reasonableness of the fee, courts consider, among other factors: the time required; the difficulty of the issues and skill required; counsel's customary hourly rate and counsel's experience and

[4] In ECF No. 52, a joint status letter, the parties explained that Defendant agreed to "serve a supplemental response to Plaintiff's Interrogatory No. 7, to add an additional email address responsive to this request but which was inadvertently omitted." Defendant's ninth interrogatory responses, dated November 14, 2025, identified these email addresses. *See* Gumaer Decl. Ex. GG, ECF No. 100-33 at 6. These interrogatory responses were served before the Court issued its November 25, 2025 order. ECF No. 93.

> reputation; the amount in controversy and the results obtained; the nature of the professional relationship with the client; and awards in similar cases.

*Oakley v. MSG Networks, Inc.*, No. 17-CV-6903, 2025 WL 3041936, at *4 (S.D.N.Y. Oct. 31, 2025) (citing *Arbor Hill*, 522 F.3d at 186 n.3).

"The party seeking fees bears the burden of demonstrating that its requested fees are reasonable." *City of Almaty, Kaz. v. Ablyazov*, No. 15-CV-5345, 2020 WL 5440553, at *2 (S.D.N.Y. Sept. 10, 2020) (citations omitted). This means that a fee applicant must show by "satisfactory evidence—in addition to the attorney's own affidavits—that the requested hourly rates are the prevailing market rates." *Farbotko v. Clinton Cnty. of New York*, 433 F.3d 204, 209 (2d Cir. 2005) (internal quotation marks and citation omitted). While a court may take judicial notice of rates awarded in other cases, "[t]he party requesting fees must produc[e] satisfactory evidence that the requested rates are in line with those prevailing in the community." *Danaher Corp. v. Travelers Indem. Co.*, No. 10-CV-121, 2014 WL 4898754, at *2 (S.D.N.Y. Sept. 30, 2014) (internal quotation marks and citation omitted).

Plaintiff fails to provide evidence to support the reasonableness of the fees it seeks. For example, Plaintiff did not provide biographical information for its timekeepers from which the Court can evaluate experience level, information regarding whether the rates charged here are customary, or case law demonstrating that courts in similar cases have awarded attorneys' fees at equivalent rates to those requested here. Plaintiff's assertion that its request for $115,110 is "plainly

reasonable given the circumstances," is insufficient. 1st Mem. at 33. Thus, while monetary sanctions are appropriate, Plaintiff's request for $115,110 is denied without prejudice to renewal. If Plaintiff renews its motion, it should provide the information described herein to allow the Court to determine the reasonableness of the fees requested. Any future motion for attorneys' fees need not address the underlying discovery disputes. Moreover, any future motion should be confined to requesting fees for work directly related to the specific conduct determined to be sanctionable.

### B. Defendant's Failure to Preserve the Lost Devices Does Not Warrant an Adverse Inference or Default Judgment

Plaintiff contends that an adverse inference or default judgment is warranted due to: (1) Defendant's violation of Court orders related to imaging his electronic devices, 2nd Mem. at 21–28; and (2) Defendant's failure to preserve his Memory Card, Tablet, and Hard Drive (collectively the "Lost Devices"). 2nd Mem. at 29–34. On the present record, neither an adverse inference nor imposition of a default judgment is appropriate.

"The first part of the spoliation inquiry 'requires the moving party to demonstrate that the spoliating party had an obligation to preserve the evidence at the time it was destroyed.'" *Oakley*, 792 F. Supp. 3d at 384 (quoting *Charlestown Cap. Advisors, LLC v. Acero Junction, Inc.*, 337 F.R.D. 47, 60–61 (S.D.N.Y. 2020)). "The obligation to preserve evidence arises when the party has notice that the evidence is relevant to litigation or when a party should have known that the evidence may be relevant to future litigation." *Id.* (quoting *Fujitsu Ltd. v. Fed.*

*Express Corp.*, 247 F.3d 423, 436 (2d Cir. 2001)). "Once the obligation to preserve relevant ESI attaches, the party in possession of that ESI must take 'reasonable steps' to preserve it." *Id.* (quoting *Charlestown Cap. Advisors*, 337 F.R.D. at 61). "After the threshold requirements have been satisfied, Rule 37(e)(1) 'permits the imposition of sanctions only when there is 'prejudice to another party from loss of the information.'" *Europe v. Equinox Holdings, Inc.*, 592 F. Supp. 3d 167, 178 (S.D.N.Y. 2022) (quoting *Lokai Holdings LLC v. Twin Tiger USA LLC*, 2018 WL 1512055, at *12 (S.D.N.Y. Mar. 12, 2018)). A party seeking sanctions under Rule 37(e)(2) must demonstrate "that the party acted with the intent to deprive another party of the information's use in the litigation."[5]

### 1. Although the Lost Devices *Could* Hold Relevant Information, a Severe Sanction is Inappropriate

Plaintiff makes a weak showing that the Lost Devices contained relevant ESI. All that Plaintiff offers is speculation that "Defendant very well could have transferred" M. Booth's confidential files to these devices. 2nd Mem. at 28. This assertion is undermined for at least one of the Lost Devices, as Defendant claims that the Tablet cannot store data at all. Gumaer Decl. Ex. GG, ECF No. 100-33 at 4–5. Plaintiff has not offered any rebuttal to this assertion. Turning to the devices that potentially could hold relevant information, the Memory Card and Hard Drive,

[5] In 2015, Rule 37(e) "was amended to specify the measures a court could employ if electronically stored information . . . was wrongfully lost and the findings required to order such measures." *Hoffer v. Tellone*, 128 F.4th 433, 437 (2d Cir. 2025). The parties cite to cases pre-dating the amendment when discussing ESI spoliation, but fail to address how to apply these cases in light of the amendment.

Plaintiff has not demonstrated that the severe sanctions of an adverse inference or default judgment are appropriate.

### 2. Defendant Did Not Take Reasonable Steps to Preserve the Memory Card or Tablet, But May Have Preserved the Hard Drive

This lawsuit was commenced on September 6, 2024, which placed Socorro-Prospero on notice of the need to preserve relevant evidence contained on his electronic devices.[6] In Defendant's August 29, 2025 fifth interrogatory responses, Defendant disclosed his use of a laptop, iPhone, Memory Card, Hard Drive, and Tablet. Gumaer Decl. Ex. S, ECF No. 100-19 at 4–5. Defendant stated that each of those devices were "[i]n the defendant's possession," or "[p]urchased by defendant," and, excluding the iPhone, "secured in [a] pelican container." *Id.* at 5.[7] However, in Defendant's November 14, 2025 ninth interrogatory responses, he explained that "[t]he 160 GB memory card, SanDisk drive and Wacom tablet . . . were misplaced after multiple moves." Gumaer Decl. Ex. GG, ECF No. 100-33 at 4–5.[8]

[6] Plaintiff argues that Defendant's duty to preserve "began on September 15, 2022, when Plaintiff served Defendant's counsel with a letter advising that Defendant downloaded approximately 80 files from Plaintiff's Google Drive without authorization," but states that "[a]t the latest, the duty to preserve arose when Plaintiff commenced this Action on September 6, 2024." 2nd Mem. at 29, 29 n.10. Regardless of which date applies, Defendant appears to have lost these devices after both dates.

[7] Defendant stated that the iPhone was "[i]n the defendant's possession devices." *Id.* at 5.

[8] Defendant's tenth interrogatory responses state that Defendant moved once, not multiple times. *See* Second Declaration of Timothy Gumaer Ex. B, ECF No. 116-2 at 3 ("Defendant retained a professional moving company in connection with his relocation and, at the time of the move, reasonably believed that the subject devices were secured within his Pelican case.").

Based on Defendant's own admissions, Socorro-Prospero's devices were initially in his possession and misplaced at some point. Defendant does not describe in any detail what steps were taken to preserve his electronic devices or how the devices were misplaced aside from stating that "[a]fter subsequent moves and delivery of property, Defendant discovered that certain devices were not present[.]" 2nd Opp. at 20. Thus, Defendant provides no evidence that he took reasonable steps to preserve the ESI on the Memory Card or, to the extent that any existed, the Tablet. This weighs in favor of imposing more severe sanctions.

Yet, Plaintiff glosses over a key detail about the Hard Drive, which appears to be the most likely location of relevant documents; a cloud-based backup of the drive apparently exists. Gumaer Decl. Ex. CC, ECF No. 100-29 at 3 (email exchange between counsel, wherein defense counsel states "a cloud-based backup image of the drive exists and can be made available in lieu of the physical device."). Indeed, Plaintiff submitted evidence of email exchanges wherein the parties discussed this cloud-based backup. *Id.* at 2–3. However, the record does not explain what came of these conversations. If a backup exists, Defendant may have preserved information on the Hard Drive. This weighs against imposing more severe sanctions.

### 3. Plaintiff Has Not Adequately Demonstrated Prejudice from Defendant's Actions Beyond Time Spent Litigating

It is possible that Defendant used one of the Lost Devices to store M. Booth's confidential information. However, as noted above, a backup of the Hard Drive appears to exist, and the Tablet apparently cannot hold data. Thus, Plaintiff fails

to demonstrate any prejudice from the loss of these two devices. Turning to the Memory Card, as Defendant points out, Plaintiff merely "speculates [what] *might* exist on Defendant's devices." 2nd Opp. at 7 (emphasis in original). Plaintiff does not offer any explanation of how Defendant used the Memory Card or why it was likely to contain relevant documents. The undersigned recognizes that the Advisory Committee noted in relation to Rule 37(e)(1) that the rule "leaves judges with discretion to determine how best to assess prejudice," and the rule "does not place a burden of proving or disproving prejudice on one party or the other" because "[d]etermining the content of lost information may be a difficult task in some cases[.]" However, Plaintiff has made no genuine effort to demonstrate that the Memory Card contained any relevant evidence. Therefore, sanctions are not appropriate under Rule 37(e)(1).

#### 4. Plaintiff Fails To Show That Defendant Acted With the Intent To Deprive

Finally, Plaintiff has not established that Defendant acted with the intent to deprive M. Booth of the information stored on the Lost Devices in this litigation. "Although an intent to deprive can be found either from a conscious act of destruction or a conscious dereliction of a known duty to preserve electronic data . . . a party's acting negligently or knowingly will not suffice to justify such sanctions[.]" *Oakley*, 792 F. Supp. 3d at 390 (cleaned up).

In its opening brief, Plaintiff primarily relies on *In re Gorsoan Ltd.*, No. 17-CV-5912, 2020 WL 3172777 (S.D.N.Y. June 15, 2020), to assert that Defendant acted with an intent to deprive. 2nd Mem. at 31–32. But, the court in that case

declined to impose an adverse inference and instead directed the spoliating party to pay reasonable attorneys' fees and costs.[9] *In re Gorsoan Ltd.*, 2020 WL 3172777, at *9–10. Moreover, that decision found that the spoliating party had acted in bad faith when she threw out her laptop weeks before her deposition, lied under oath, and failed to appear for a deposition. *Id.* at *9. While Defendant has been derelict in his discovery obligations, he identified the Lost Devices in response to Plaintiff's discovery requests (albeit after a period of delay), ultimately had his iPhone and laptop imaged, and offers at least some explanation, aside from bad faith, for how the devices were lost. The loss of the devices, while negligent, was not accompanied by the indicia of deception displayed by the spoliating party in *In re Gorsoan Ltd.*

Additionally, Plaintiff's reliance on *Robertson v. Dowbenko*, 443 Fed. App'x 659 (2d Cir. 2011) (summary order), to support its request for a default judgment is misplaced. 2nd Mem. at 24–27. There, the Second Circuit affirmed the District Court's judgment awarding damages following entry of a default judgment. *Robertson*, 443 Fed. App'x at 660–61. However, default judgment was entered in the context of a *pro se* defendant, acting on his behalf and purportedly on behalf of other defendants who had not appeared at all, who made voluminous filings including thirteen motions to dismiss, disregarded court orders to have other defendants appear through counsel, and provided wholly inadequate discovery responses, including providing one-word interrogatory responses such as

[9] This decision is not particularly instructive because the court addressing discovery sanctions was not the court deciding the merits.

"[i]nappropriate." *Robertson v. Doe*, No. 5-CV-7046, 2008 WL 2519894, at *1–2, *2 n.10 (S.D.N.Y. June 19, 2008). While Defendant's conduct is unacceptable, it does not evidence this same level of bad faith and is not equivalent to failing to appear at all. Therefore, the undersigned finds that a default judgment and an adverse inference are not appropriate on the present record. However, it is conceivable that Plaintiff could demonstrate that a more severe sanction is warranted based on new evidence, such as testimony about how the Lost Devices were used and whether they stored relevant information. Plaintiff might be able to renew its motion if new evidence emerges regarding the Lost Devices.

### C. Plaintiff's Motion for an Adverse Inference or Default Judgment Based on Defendant's Alleged Deletion of Data on His iPhone and Laptop Is Premature

Plaintiff asserts for the first time in its reply brief in further support of the Second Motion that forensic imaging of Defendant's iPhone and laptop "revealed the deletion of data which is not recoverable." 2nd Reply at 6. Moreover, Plaintiff stated in its August 12, 2026 letter to the Court that "Plaintiff's expert reports details mass deletion or system purging of data on Defendant's Laptop and iPhone." ECF No. 140 at 4 n.3. That expert report was not filed with the present Motions and cannot be considered. Plaintiff did, however, submit a declaration from Michael Kunkel, the Director of Investigative Services at the firm retained by Plaintiff to image Defendant's electronic devices. ECF No. 123-1. But, in his declaration Kunkel concludes that "[i]t will become possible to better understand the nature and extent of deleted data and other usage information associated with the iPhone and MacBook Pro laptop once the forensic analysis is performed in

accordance with a Protocol that is agreed upon by the parties and/or adopted by the Court." *Id.* ¶¶ 2, 5, 11. In contrast to the Lost Devices, where Plaintiff only offers speculation that they contained relevant information, Plaintiff appears to have evidence of spoliation of ESI on Defendant's laptop and iPhone that occurred as recently as March 2026 (right before those devices were imaged), which could suggest an improper motive by Defendant in deleting data relevant to this litigation. *Id.* ¶ 10. But Plaintiff offered only tentative findings and did so for the first time in its reply such that Defendant did not have an opportunity to respond. Thus, while it is possible that Plaintiff could make a showing that spoliation of ESI on Defendant's iPhone and laptop could warrant a more severe sanction, the Second Motion was filed prematurely. Therefore, Plaintiff's request for imposition of an adverse inference or default judgment based on spoliation of ESI on Defendant's iPhone and laptop is denied without prejudice to renewal.

## IV. CONCLUSION

For the reasons stated above, Plaintiff's First Motion is **GRANTED IN PART and DENIED IN PART** without prejudice to renewal, and Plaintiff's Second Motion is **DENIED** without prejudice to renewal based on new evidence. Plaintiff may renew its motion for monetary sanctions and, if it does, must include information from which the undersigned can assess the reasonableness of its fees and the hours expended litigating Socorro-Prospero's sanctionable conduct. Plaintiff may also renew its motion for default judgment or an adverse inference if it is able to provide evidence of spoliation of relevant information on Defendant's Lost Devices, iPhone, and/or laptop. Before renewing these motions, Plaintiff must

seek a premotion conference to ensure that any briefing is streamlined and focused on analysis that will be helpful to the Court.

The Clerk of Court is respectfully directed to terminate Plaintiff's First Motion at ECF No. 99 as **GRANTED IN PART and DENIED IN PART**, and Plaintiff's Second Motion at ECF No. 115 as **DENIED**.

**SO ORDERED.**

Dated: September 11, 2026
New York, New York

Henry J. Ricardo
United States Magistrate Judge